## Bricker, Appellant, *v.* Doyle.

*Sheriff's interpleader—Bond—Property — Successive executions —Amendment—Withdrawal of property.*

Where property is levied upon under a fi. fa. and subsequently a second writ of fi. fa. is issued by another execution creditor and lodged in the hands of the sheriff, and a claimant of all the property levied upon files a bond under the Act of May 26, 1897, P. L. 95, conditioned "to maintain his title to said goods and chattels or pay the value thereof to the party entitled," the bond takes the place of the goods and enures to all persons who may have a right in the goods, until it is exhausted. The claimant cannot, therefore, on the trial of an interpleader issue between himself and the first execution creditor be permitted to amend his statement by withdrawing a claim to some of the goods, alleged to have been included in the schedule attached to the bonds, by a mistake or inadvertence.

Argued Nov. 29, 1915.    Appeal, No. 284, Oct. T., 1915, by plaintiff, from judgment of Municipal Court, Feb. T., 1915, Sheriff's Interpleader No. 58, for defendant on case tried by the court without a jury in suit of William H. Bricker, Jr., v. Wm. H. Doyle, to the use of James J. McArdle and William E. Cooney, Copartners, trading as McArdle & Cooney. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Issue on sheriff's interpleader.    Before GILPIN, J.

At the trial plaintiff made the following offer to amend the statement.

"Mr. Thomas: I offer in evidence all the records of Frederick Gerber versus William H. Bricker, Municipal Court, March Term, 1915, No. 719, and I make the motion for the reason that the second execution was issued in the month of April, 1915, and while the first execution was still pending and that the bond and the first execution were not filed until the latter part of May, 1915, that by virtue of the filing of the first bond, there being a second execution, that the goods still are in the custody of the sheriff in the contemplation of the law of Philadelphia County; that my client, the plaintiff in this case, has never been able to legally get possession of all the goods in question here. I make the motion to the effect that there has been a mistake through the inadvertence of the attorney representing the plaintiff; that certain goods marked in the Schedule A attached to the claimant's statement of claim was through mistake, and that these goods are as follows: one piano, phonograph, recording cabinet, one electric player as shown in Exhibit A; as we claim that we did not have the ownership of these goods, or never had them; that they were put in the Schedule A through mistake and inadvertence of the plaintiff's attorney. I make the motion now for the purpose of amending the plaintiff's statement of claim and to have those goods stricken off the list which are enumerated in Schedule A.

"Mr. Smyth: I object to the motion.

"The Court: I will overrule the motion for the present and give you an exception, Mr. Thomas." (1)

"Mr. Thomas: I ask that under all the evidence in the case, the finding should be for the plaintiff on all the goods with the exception of one piano, phonograph, recording cabinet, one electric player, as set forth in the plaintiff's statement of claim, marked Exhibit 'A' was refused." (2)

Judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above rulings quoting the bill of exceptions.

*Walter Thomas,* for appellant.—After the bond has been given and the claimant receives the property, the title vests in him and the lien of the execution ended: Meyer v. Knight, 21 Pa. Superior Ct. 1; Saba v. McElwaine, 57 Pa. Superior Ct. 369; Mann v. Salsberg, 17 Pa. Superior Ct. 280; Makinson v. Calely, 11 Dist. 516.

*William J. Smyth,* for appellees, cited: Rush v. Vought, 55 Pa. 437; Stewart & Co. v. Wilson, 42 Pa. 452; Leach v. Alexander, 12 Pa. Superior Ct. 377.

OPINION BY PORTER, J., October 9, 1916:

The action was a sheriff's interpleader. Our statute of May 26, 1897, P. P. 95, clearly defines the procedure to be followed in such case and the legal effect of the various steps to be taken by the parties. In Meyers v. Knight, 21 Pa. Superior Ct. 1, this court pointed out the difference wrought by the passage of this statute in the formerly existing practice in such cases. It was there said: "The practice established by the Act of 1897, is radically different from that which had prevailed under the earlier statute......The condition of the bond must be that the claimant shall at all times maintain his title to said goods and chattels or pay the value thereof, to the party thereto entitled. The bond inures not only to the benefit of the plaintiff in the execution, but to all other persons who may be adjudged to have the right or title to the goods, and successive suits may be brought thereon to the use of such persons until the amount thereof is exhausted. The claimant cannot discharge his bond by surrendering or offering to surrender the goods; he must maintain his title or pay," &c. The terms of the statute itself, as well as the doctrine of the case cited, following the plain language and clear intendment of the statute, leave the present appellant no

ground to complain of the disposition of the present case.

The defendants obtained an adverse judgment against Dr. William H. Bricker and caused a writ of fi. fa. to be issued for the purpose of collecting the amount of the debt evidenced by said judgment. In pursuance of his obligation upon the receipt of the writ, the sheriff levied on a considerable amount of personal property as that of the defendant. The writ issued on April 12, 1915. On the 26th of the same month a second writ of fi. fa. on the judgment of some other creditor reached the hands of the sheriff, and of course created a lien on the goods already levied upon subject to the prior right of the first execution creditor. The present appellant made a formal claim of his title to or right of possession of all of the goods embraced in the levy. The sheriff obtained the usual rule requiring the parties to interplead, and in due time it was made absolute. The claimant thereupon, exercising the privilege conferred upon him by the statute, after the goods had been appraised, tendered his bond in double the appraised value with an approved surety. In the issue which followed, the claimant was made plaintiff, as the act requires, and the execution creditor the defendant. Thus the burden of establishing his right, following his claim, was clearly upon the plaintiff claimant. When the bond was filed, the statute declares, "and thereupon the sheriff shall deliver said goods and chattels to the claimant." It thus becomes clear that, by the acts of the claimant in making his claim and providing the bond necessary to support it, the grasp of the execution creditors was loosed from the property levied upon, and their recourse thereafter was confined to an action on the bond, which was made a substitute for the property released from the execution. With the filing of the bond, the creditors, and the sheriff executing the process issued by them, no longer retained any legal control over the property levied upon. Thereafter the claimant had the right to take the possession

from the sheriff notwithstanding the levy and could have successfully invoked the aid of the court to enable him to do so. It matters not there were two executions in the hands of the sheriff. The bond, as the statute declares, inured to the benefit of each and every one of them in the order of their respective liens, and each one of them could institute a separate action on the same bond until, according to its terms, the obligation of the claimant created thereby was exhausted.

Now we think it manifest, the law being so, the claimant could not at the trial, under the guise of an application to amend his statement of claim, cut in two the liability created by his bond and relieve himself to that extent. If so then, by such a simple proceeding, the execution creditors would first be deprived of their lien upon and control of the property under levy, for this result flowed from the execution of the bond. They would thereafter, when perhaps the property had been scattered, lost or destroyed, find their security greatly diminished in value by the simple means of an amendment to the claimant's statement. We see no error in the refusal of the learned trial judge to make an order that would be followed by such a result.

There is nothing in the decision of this court in Feinstein v. Welischedk, 59 Pa. Superior Ct. 324, to contravene, in principle, what we have just said. In that case it appeared that more property had been embraced in the sheriff's appraisement, which prima facie fixed the amount of the bond, than had been contained in the claimant's original notice of his claim which was the foundation of the proceeding. It was the goods so claimed that should have been appraised to fix the amount of the bond, and the claimant was not chargeable with the mistake made by another. The present record exhibits no substantial error on the part of the learned trial judge, and the appeal must therefore be dismissed.

Judgment affirmed.